IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GARY LEROY HAYES, | ) | C/A No. 4:06-1951-TLW-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STAN BURTT, WARDEN; AND | ) | |
| HENRY McMASTER, ATTORNEY | ) | |
| GENERAL OF SOUTH CAROLINA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Gary Leroy Hayes ("petitioner/Hayes"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on July 5, 2006. Respondents filed a motion for summary judgment on September 28, 2006, along with supporting memorandum. The undersigned issued an order filed October 19, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on November 15, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the respondents. Therefore, the undisputed procedural history as set out in respondents' memorandum will be discussed below.

Petitioner is presently in custody of the South Carolina Department of Corrections pursuant to Orders of Commitment from the Clerk of Court for Georgetown County. At the October 1998 term, the Georgetown County Grand Jury indicted petitioner for murder (98- GS-22-0839). {PCR App. 295-96}.

Petitioner was represented at the trial level by David Hood, Esquire. Petitioner was tried before the Honorable Howard P. King and a jury from January 24 to 28, 2000. The jury found petitioner guilty of the lesser included offense of voluntary manslaughter {PCR Supp. App. 598}, and Judge King sentenced petitioner to fifteen (15) years. {PCR App. 296; PCR Supp. App. 605}.

A timely notice of appeal was filed and served with the South Carolina Court of Appeals on February 3, 2000. Robert Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his direct appeal. On April 23, 2001, Pachak filed a Final Brief of Appellant, in which he raised the following issues on behalf of petitioner:

1. Whether the trial court erred in admitting a photograph (Exhibit S-10) of the victim which was unduly prejudicial and not necessary to the State's case?
2. Whether the trial court erred in limiting the testimony of a private investigator for the defense as an expert witness by erroneously ruling that he was unqualified as an expert witness and that the underlying science was unreliable under Rule 702, SCRE?

The State filed a Final Brief of Respondent on March 13, 2001.

The case was submitted to the state court of appeals on July 25, 2001, and the case was affirmed by that court in an unpublished opinion. State v. Hayes, Unpub. Op. No. 2001-UP-415 (S.C. Ct. App. September 27, 2001). The Remittitur was sent down on October 15, 2001.

Petitioner next filed in Georgetown County Common Pleas Court an Application for Post-Conviction Relief ("APCR"), on July 23, 2002. {PCR App. 212}. In the APCR, petitioner raised the following grounds for relief:

1. Ineffective assistance of trial counsel.

Issue I.    Trial counsel failed to present an affirmative defense of former, prior, or double jeopardy at the beginning of Hayes' second trial after his first trial ended in a mistrial.

Issue II.    Trial counsel failed to present Ethridge's address book and checkbook as an exhibit for the defense.

Issue III.    Trial counsel failed to subpoena Raymond Michaux, who is claimed to be an eye witness to the assault of Ethridge.

Issue IV.    Trial counsel failed to subpoena witnesses who seen Ethridge on the day previous to the day the State claims she was assaulted.

Issue V.    Trial counsel failed to demonstrate to the Court that the Jones factors as outlined in State v. Council, 515 S.E.2d 508, 335 S.C. 1 (1999) were not applicable towards the qualifications of defense witness C.E. Martin in the field of criminal investigation.

Issue VI.    Trial counsel failed to make a contemporaneous objection to autopsy photo #10 before it was published to the jury through a witness for the State.

Issue VII.    Trial counsel failed to make a contemporaneous objection to the testimony of Mike Baker and Fred Lytle concerning the alleged statements they claim

3

were made during the interrogation of Hayes at SLED headquarters in Columbia.

2.       Ineffective assistance of appellate counsel.

Issue I.       Appellate counsel (Pachak) failed to honor Hayes' request and instruction to submit a petition for rehearing to the Court of Appeals.

Petitioner, through counsel J. Wesley Locklear, III, filed an Amended APCR on July 15, 2003, in which he raised the following issues on behalf of petitioner:

> The Applicant was denied effective assistance of counsel by his trial counsel and appellate counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 14 of the South Carolina Constitution, and the court lacked jurisdiction. Applicant's trial attorney was ineffective for failing to object on double jeopardy grounds to Applicant's second trial; Applicant's attorney failed to present crucial evidence and witnesses at trial and such decisions were not based upon trial strategy; Trial Counsel failed to properly object to the introduction of certain evidence; Applicant's trial counsel failed to investigate and raise certain defenses on behalf [of Applicant]; Applicant's Trial Counsel failed to request a continuance to obtain a crucial witness for the defense; Trial Counsel failed to object to the trial court's comments to a witness while the witness was testifying; Trial Counsel failed to object to improper remarks by the prosecution during closing arguments; and the court lacked subject matter jurisdiction.

{PCR App. 217}. The State subsequently filed a Return on March 25, 2004 {PCR App. 220}.

An evidentiary hearing in the PCR was held on April 27, 2004, before the Honorable B. Hicks Harwell. {PCR App. 224}. Petitioner was present and represented by counsel Locklear. Petitioner called himself to testify at the hearing; the State called trial counsel. On June 15, 2004, Judge Harwell signed an Order of Dismissal with Prejudice that rejected petitioner's claims. {PCR App. 283}

4

A notice of appeal was filed with the South Carolina Supreme Court from Judge Harwell's Order of Dismissal in the APCR. Wesley Locklear also represented petitioner during his PCR appeal. On December 12, 2004, Locklear filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which he raised the following issues on behalf of petitioner:

> 1.    Did the lower court err in failing to find petitioner's trial counsel was ineffective?
>
> 2.    Did the lower court err in failing to find petitioner's [appellate] counsel was ineffective?

The State filed a letter Return on February 2, 2005. Petitioner filed a pro se Petition for Writ of Certiorari dated February 1, 2005, in which he raised the following issues:

> 1.    Did the PCR judge err in failing to find Petitioner's trial counsel ineffective for not presenting a Constitutional defense of former, prior or double jeopardy after Petitioner's first trial was declared a mistrial?
>
> 2.    Was trial counsel ineffective in failing to present victim's checkbook as a defense exhibit at Petitioner's trials?
>
> 3.    Was trial counsel ineffective for failing to make a contemporaneous objection to autopsy photo #10 as it was published to the jury through a witness for the State?
>
> 4.    Was trial counsel ineffective in failing to subpoena Raymond Michaux who claims to be an eye witness to the assault of the victim?

On May 3, 2006, the South Carolina Supreme Court issued an Order in which it denied the Petition for Writ of Certiorari and granted the Petition to be Relieved as Counsel. A *pro se* Petition for Rehearing was filed on May 16, 2006; the state supreme court denied it by Order dated June 7, 2006. The Remittitur was sent down the same day.

5

## II.  BACKGROUND/STATEMENT OF FACTS

It seems beneficial to set out the facts by way of background. In their memorandum, respondents set forth the facts as noted by the South Carolina Court of Appeals. This set of facts will be set out in this report and recommendation for background history as follows:

> On January 12, 1998, at approximately 2:00 p.m., emergency medical services (EMS) personnel responded to the home of Patsy Gail Etheridge in Georgetown. Upon arrival, they discovered Etheridge lying on a couch, naked and unconscious, with "vomit coming out of her mouth." Etheridge's left eye was swollen and blackened, she was bleeding from her lower lip, and she also had some bruising to her left collarbone area. The only other person in the house at the time was Etheridge's boyfriend, Gary Hayes. Hayes, who appeared "kind of anxious and nervous," told the EMS crew Etheridge had been in an auto accident a few days before.

> EMS technicians transported Etheridge by ambulance to Georgetown Memorial Hospital. William Richmond, an emergency room physician, treated Etheridge, whom he described as "a critically injured patient pretty close to death." Etheridge, in fact, died the next day. Because her injuries seemed suspicious, hospital personnel notified the Georgetown County Sheriff's Department; the Department in turn requested investigative assistance from the State Law Enforcement Division (SLED).

> The following day, January 13, SLED investigators conducted a taped interview with Hayes at the Andrews Police Department. A second interview with SLED agents in Columbia took place on January 23. During a break in this interview, Hayes told Detective Mike Baker that he and Etheridge had gotten into an argument, that Etheridge had thrown Alka Seltzer in his face, and that he responded by hitting her repeatedly about the head and face. Afterward, Hayes asked to speak to the lead investigator, Fred Lytle, and reiterated to him that he struck Etheridge when she threw the Alka Seltzer.

6

### III.  SUMMARY JUDGMENT

On September 28, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment.  As stated, petitioner filed a response in opposition on November 15, 2006.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

7

movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since Hayes filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir. 1998); <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In a thorough discussion of the application of this statute in <u>Green</u>, the Fourth Circuit stated:

> If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ of habeas corpus should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts. In other words, habeas relief is authorized only when the state courts have decided the question by

interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable.

See also Fitzgerald v. Greene, 150 F.3d 357, 362 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 156 (4th Cir. 1998); Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir. 1998). In Williams v. Taylor, 163 F.3d 860 (4th Cir. 1998), the court specifically rejected an argument that the standard of review enunciated in Green, 143 F.3d 865, was erroneous. Thus, to a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (lst Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review"). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Wilson v. Moore, 999 F. Supp. 783 (D.S.C. 1998).

## V. ARGUMENTS/FINDINGS

As all of petitioner's grounds for relief pertain to ineffective assistance of counsel, the law will be discussed first and then applied under each ground without restating the law.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland , supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must

9

first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been

different but for counsel's error." <u>See</u> <u>Williams v. Taylor</u>, Nos. 98-14, 98-16, 1998 WL 883336 (4th

Cir. Va. Dec. 18, 1998) (quoting <u>Lockhart</u>, at 369-70).

<u>GROUND ONE</u>

In ground one, petitioner alleges as follows:

> Trial counsel failed to present a Constitutional defense of double, former, or prior jeopardy at the beginning of second trial. At the first trial. The judge walked out of the courtroom while the jury was listening through headphones to a taped interview of Hayes, a detective and a SLED agent. When the judge returned, he declared a mistrial on the grounds the jury had heard prejudicial information on the tape. At the second trial, trial counsel failed to present a double jeopardy claim as a defense.

In their memorandum in support of summary judgment, respondents argue trial counsel

testified that he moved for a mistrial based on prejudicial information in the taped statement, and that

he and petitioner considered it a benefit. Respondents further contend that there is no indication that

his mistrial was improvidently granted, and certainly no proof that the prosecution had the specific

intent to provoke the mistrial for a strategic reason. Thus, respondents assert since there was no

viable double jeopardy defense, counsel could not have been deficient nor petitioner prejudiced for

the failure to raise it.

A review of the order of dismissal by the PCR court reveals the PCR Judge found that,

quoted verbatim:

> The Applicant testified at the PCR hearing that trial counsel was ineffective because he did not present the affirmative defense of Double Jeopardy. The Applicant argued that, because his first trial ended in a mistrial, the prosecution should have been barred from proceeding due to Double Jeopardy. Trial counsel testified at the PCR

11

hearing that he did not believe there was a Double Jeopardy issue because no decision on the merits was rendered in the first trial.

.    .    .

The Applicant's first trial ended in a mistrial when the jury heard prejudicial statements made during an interview between the Applicant, a Georgetown County Sheriff's Deputy, and a SLED agent. Those statements were later redacted from the interview tape and the jury in the second trial heard only the redacted version. The Applicant was not acquitted or convicted, nor was the mistrial improvidently granted in the first trial. State v. Baum, supra. The mistrial was granted in order to protect the Applicant's right to a fair trial and the merits of the charges against him were never resolved. Id. Because there was no Double Jeopardy issue, trial counsel was not ineffective in failing to raise it as an affirmative defense. Accordingly, this claim is denied.

(PCR transcript p. 287).

A review of the PCR transcript reveals counsel testified as follows:

Q:    What is your understanding about his double jeopardy issue in terms of that he couldn't have been tried a second time?

A:    Well there wasn't any verdict decision rendered. Basically it was our motion for a mistrial and I thought it gave us an opportunity to kind of see what the State- - -

Court: What was your reason for making your motion for a mistrial that was granted?

A:    The, pretty much what Gary was, was, had stated. I made a motion to object and I think the judge had an emergency or something and, and, and wasn't on the bench and so he couldn't hear the motion, couldn't stop the tape. The solicitor's office, I think the judge was under the opinion that they should have handled that rather than, at the trial itself it should have been taken care of earlier.

Court: Did he indicate to you at any time in the first trial in the way you were proceeding or in the second trial that he was unhappy or not pleased with your representation? Did he raise any issues?

A:    No, I think we basically kind of worked with his theory of the case, tried to develop that theory. We had two medical experts. We had a private

12

investigator and we had a, another investigator who we didn't use but who we
had hoped to use as, as an expert witness but- -

. . .

Q:     So in your opinion there was, there was no double, double jeopardy,[sic]
       double jeopardy hadn't attached?

A.     No, that was, I didn't believe so.

(PCR Tr. 261-263).

The undersigned concludes that the record supports the state PCR court's holding and it is
not contrary to clearly established federal law and an unreasonable determination of the facts in light
of the evidence in the state court proceedings. Pursuant to the Double Jeopardy Clause, a defendant
is protected from (1) prosecution for the same offense after acquittal, (2) prosecution for the same
offense after conviction, and (3) multiple prosecution for the same offense after an improvidently
granted mistrial. State v. Baum, 355 S.C. 209, 584 S.E.2d 419 (Ct. App. 2003); State v. Rowlands,
343 S.C. 454, 457, 539 S.E.2d 717, 718 (Ct. App. 2000). In Oregon v. Kennedy, 456 U.S. 667, 676-
77, 102 S.Ct. at 2083 (1982), the Supreme Court adopted a rule providing that a defendant who has
moved for and been granted a mistrial may successfully invoke the Double Jeopardy Clause to
prevent a second prosecution only when the prosecutor's conduct giving rise to the mistrial was
intended to "goad" or provoke him into moving for mistrial. In this case, respondents have noted that
there was no transcript of the first trial. From the record, it appears the trial judge's brief absence
from the bench led to the mistrial. Additionally, based on counsel's testimony that he moved for the
mistrial and considered it a benefit and there is no indication that the mistrial was improvidently
granted or that the prosecution had the specific intent to provoke the mistrial for any strategic reason,
the Double Jeopardy Clause would not apply in this case. Accordingly, it is recommended that

13

respondents' motion for summary judgment be granted on this issue.

## **GROUND TWO**

In ground two of petitioner's habeas petition, he alleges as follows:

> Trial counsel failed to present the victim's checkbook at trial as a defense exhibit after filing a Rule 5 motion to obtain it. Petitioner informed the police, solicitor's office, defense investigator and trial counsel the victim's checkbook contained exculpatory evidence that would aide the jury at trial. Counsel filed a Rule 5, Brady motion on September 3, 1999, to obtain the checkbook that was in possession of the State. Petitioner has written forty-five or more letters since January of 1998 trying to obtain this checkbook. The State and trial counsel still refuses to allow this checkbook to be seen by the Petitioner.

(PCR Tr. 238-39).

Respondents argue summary judgment should be granted as this issue. Specifically, respondents assert that the PCR court noted the checkbook only reflected that the victim wrote checks in December of 1997, and she was not killed until January 12, 1997; petitioner failed to show any actual exculpatory value to the checkbook; and, petitioner did not put the checkbook into evidence at the PCR hearing. Respondents argue that regardless, even with his presentation in PCR, petitioner did not establish that counsel was deficient in pursuing allegedly beneficial information in the checkbook. First, respondents argue "as counsel pointed out and the PCR judge accepted, the last check in the book was over two weeks prior to the beating that led to the victim's death, and petitioner failed to explain or show how such a remote check would have been exculpatory evidence of any moment." Second, respondents argue that "petitioner's claim that some of the checkbook is missing is insufficient to overcome his failure of proof before the PCR Court. The only evidence that any of the checkbook was missing was petitioner's unsupported and conclusory statement to that

14

end, he did not even bother to explain how he supposedly knows part of it is missing. On the other hand, counsel claimed to the contrary that he reviewed the original, believed he had the entire checkbook, and determined because of the remote date of the last check it was no beneficial to the defense." Respondents assert that even if petitioner "was correct that the checkbook might have shown less than savory individuals with whom the victim might have had contact closer in time to her death, that fact alone is insufficient to create a reasonable probability of a different result." (Respondents' brief, p. 14-16).

A review of the PCR hearing transcript reveals petitioner testified that he explained that he would "take that checkbook and the address book and then help them find, you know, use that as a vehicle to help them find who, who assaulted Gail." (PCR Tr. 238). Petitioner read out some of the names from pages of the checkbook but then stated that he did not have all of the checkbook. Petitioner testified that his attorney should have obtained the entire checkbook to be able to fully investigate his case. (Tr. 239). On cross examination, petitioner testified that Gail, the victim, was a "real stickler about checks. She, she didn't carry a lot of money on her and she wrote down every check and she never would write a hot check." When asked if the victim put times on her checks, petitioner testified no she only put the date. Thus, the cross-examining attorney pointed out that if there is a date on a check it could be written anywhere within 24 hours. When asked how just the fact that victim may have written a check to someone else could show that someone else beat her up, petitioner responded that "well it doesn't, it just corroborates my story that she was with someone else and if you would get the names of that person and talk to them, like William Turner. I don't know how  involved in, in this he is, but I know he's involved and- - -" (PCR Tr. 252).

15

Trial counsel testified at the PCR hearing that he obtained a copy of the address book and checkbook before trial and counsel reviewed it finding that it really did not help. Counsel testified that the last check was written on December 27 to the Piggly Wiggly and the incident occurred in January. Counsel testified that he did not see how the checkbook would have helped petitioner at trial. (Tr. 263-264).

A review of the PCR decision reveals the following:

> The Applicant testified at the PCR hearing that trial counsel was ineffective in failing to present the victim's address book and checkbook as defense exhibits. He stated that the books contained information that demonstrated the victim had contact with other people and might have led the police to the real perpetrator of the crime. The Applicant offered a portion of the victim's checkbook as an exhibit at the PCR hearing. The last check in the checkbook was dated in December of 1997. The injuries sustained by the victim that led to her death occurred on or about January 12, 1998.
>
> Trial counsel testified that he did not remember exactly when he received the checkbook information, but that he did not believe it would have helped at Applicant's trial.
>
> This Court finds Applicant's claim to be without merit. The Applicant did offer the checkbook at the PCR hearing, but it merely showed that the victim wrote checks the month before she was killed. It did not provide any exculpatory information whatsoever. The Applicant did not carry his burden so show that his evidence was prejudicial or that it would have changed the result of the trial. Accordingly, trial counsel was not ineffective in failing to offer the checkbook into evidence at trial. Therefore, this claim is denied.

(Tr. 288).

The undersigned concludes respondents' motion for summary judgment should be granted with respect to this issue. The petitioner has failed to show that his counsel was ineffective in representing him due to his failure to introduce the checkbook into evidence at the trial. Counsel

testified that he obtained a copy of the original checkbook from the Solicitor and reviewed it. However, counsel testified that he did not believe the checkbook would help petitioner at trial because the last check written was in December and the incident occurred in January. Petitioner testified at the PCR hearing that he could take the checkbook and the address book and use them as a vehicle to help find who assaulted the victim. Petitioner testified that the checkbook would corroborate his story that the victim "was with someone else." The PCR court found that the last check in the checkbook was dated in December of 1997. The injuries sustained by the victim that led to her death occurred on or about January 12, 1998. Thus, the PCR concluded that "the Applicant did offer the checkbook at the PCR hearing, but it merely showed that the victim wrote checks the month before she was killed. It did not provide any exculpatory information whatsoever." Based on the above, the record supports the state PCR court's holding and it is not contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence in the state court proceedings.

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as alleged in ground two of petitioner's claim for the reasons set forth above. Counsel acted reasonably in his representation. The undersigned finds that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable. Therefore, based on the above, the undersigned finds that ground two is without merit and is appropriately denied for habeas corpus consideration. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

17

## **GROUND THREE**

Petitioner raises the following as ground three in his habeas petition:

> Trial counsel failed to make a contemporaneous objection to autopsy
> photo S-10 when it was published to the jury by the Sate. Counsel did
> object to autopsy photo #10 during an in camera hearing but did not
> object as the photo was published to the jury by Dr. Robert E.
> Thomas who testified for the State as an expert in pathology. Dr.
> Thomas was never asked why a respirator is still in the mouth of a
> person after the autopsy was performed. This photo did not show
> anything photos #4, #6, and #13 did not show and was clearly
> prejudicial.

Specifically, petitioner argues that trial counsel made an objection to an autopsy photo but

failed to renew the objections before it was published to the jury by a state expert.

Respondents argue this issue is insufficient for relief. Respondents assert that when the

officer arrived at petitioner's residence following the 911 call, they found the victim naked,

unconscious, bleeding, and bruised. Petitioner appeared nervous and told the officers the victim was

drinking heavily the night before and added she had been in a car wreck a few days earlier. (Tr. 115-

120). Respondents note the Emergency Room physician testified that in his opinion, the victim's

injuries were recent and in no way related to the December 13, 1997, accident. (Tr. 128-131).

A review of the PCR Judge's Order reveals the following findings with regard to this issue:

> The Applicant testified at the PCR hearing that trial counsel was
> ineffective in failing to make a contemporaneous objection to an
> autopsy photo before it was published to the jury. The Applicant
> testified that the photo was prejudicial because it showed a respirator
> still in the victim's mouth. Trial counsel testified that he objected to
> the photo outside the presence of the jury. He argued at the time that
> the photo was extremely prejudicial and would inflame the passions
> of the jury. Trial counsel testified at the PCR hearing that he did not
> believe the photo showed anything new or that it was more
> prejudicial than the other photos offered into evidence.

18

> This Court finds that trial counsel was not ineffective in failing to make a contemporaneous objection to the photo. Trial counsel did object outside the presence of the jury and on the record. The trial court listened to trial counsel's vehement objection and ruled that the probative value of the photo outweighed the prejudicial effect. Furthermore, this issue was addressed on direct appeal and the Court of Appeals found that the photograph supported the State's medical testimony concerning that cause of death and that the trial court did not err in admitting it into evidence. Therefore, this claim is denied.

(Tr. 290-291).

South Carolina has a contemporaneous objection rule. See Pike v. South Carolina Department of Transportation, 332 S.C. 605, 506 S.E.2d 516, 521 (1988)("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court.")." Id at 482. In this case, trial counsel made objections outside the presence of the jury and on the record. The trial court ruled the probative value of the photo outweighed the prejudicial effect. The issue was addressed on direct appeal as trial court error and the Court of Appeals concluded the photograph supported the State's medical testimony concerning the cause of death and that the trial court did not err in admitting it into evidence. In federal habeas actions, the court does not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000). Further, the South Carolina Court of Appeals noted that the admissibility of photographic evidence rests in the sound discretion of the trial court. As the South Carolina Court of Appeals reviewed the issue, it was preserved for appeal. Thus, petitioner has not shown any prejudicial error if error was found on the part of trial counsel. Strickland, supra. A thorough review of the record by the undersigned results in the recommendation that respondents' motion for

19

summary judgment be granted on this issue. The petitioner has simply put forth insufficient evidence to show that his counsel was ineffective in representing by failing to make a contemporaneous objection to an autopsy photo before it was published to the jury when he had already objected, the objection was denied by the trial judge, counsel was informed by the trial judge that the objection was preserved, and the South Carolina Court of Appeals reviewed the issue for trial court error. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as alleged in ground three of petitioner's claim for the reasons set forth above. Counsel acted reasonably in his representation. The undersigned finds that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming arguendo there was error, to show the result was fundamentally unfair or unreliable. Therefore, based on the above, the undersigned finds that ground three is without merit and is appropriately denied for habeas corpus consideration. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## **GROUND FOUR**

Petitioner alleges the following as ground four in his habeas petition, quoted verbatim:

> Counsel failed to subpoena an eye-witness to the assault of the victim to testify for the defense. Petitioner informed counsel that someone had come forward with information [sic] an eye-witness to the assault of the victim. Petitioner informed counsel and the sheriff's office. This witness was interviewed and subpoenaed for the first trial but not the second trial of petitioner.

(Petition).

20

Specifically, petitioner alleges that his counsel was ineffective for failing to subpoena and call Raymond Michaux (spelled as Mishoe in the PCR record) to testify. Petitioner alleges that Michaux is supposedly an eyewitness or knows an eyewitness to the victim's beating.

Respondent argues that this issue should be dismissed the state court decision is not objectively unreasonable. Respondents argue that the PCR court found that counsel was not deficient when it found petitioner's testimony was not credible and further noted petitioner had not offered the testimony of Michaux at the hearing. Additionally, respondents assert the PCR court was correct in concluding petitioner failed to show prejudice.

At the PCR hearing, petitioner testified as follows with regards to Mr. Michaux when asked by the court what light he could have shared:

> Well he claims to have been there, That's, that's what I was saying in this letter that I received from Marilyn. She asked me, have you heard any more in your appeal. Raymond Mishoe said if you could [get] back into court he would tell what happened and also the way I first learned that Raymond Mishoe was, was there is when I was in jail waiting to go to trial he was there for something else, of driving under suspension or something, I don't know what if was, anyway he was in the next cell block over and we could talk to each other through the back door. They had a door going from one wing to the other you could talk to people through and anyway, anyway he had information that, you know, would have been helpful I think, you know, he's supposed to have been there because he, he told me he was there, but he couldn't testify then because of his family. Now he never did explain that but I think one of his family, brother or something was going with one of her cousin's or something, I don't know what it was, but he never could explain why and I, but - - -

(PCR Tr. 258-259).

The Court asked petitioner if Mr. Michaux had ever furnished him with any information or come forward. Petitioner testified that he had not "all he said was he was there but he couldn't tell anybody, that's all he would tell me." (PCR Tr. 259).

A review of the PCR decision reveals the following conclusion with regard to this issue.

> The Applicant alleged that trial counsel was ineffective in failing to subpoena an eyewitness to the assault on the victim and in failing to subpoena two witnesses who saw the victim the day before the assault. The Applicant testified at the PCR hearing that Raymond Michaux who was detained in the cellblock next to the Applicant, told the Applicant, "I was there when [the victim] got beat up but I can't tell anybody because of my family." Michaux did not explain to the Applicant why he couldn't tell anybody. The Applicant did not present Michaux at the PCR hearing. Trial counsel testified that Michaux was under subpoena but did not show up for trial. Michaux had also been subpoenaed to appear at the first trial. Trial counsel never talked to Michaux because he could never locate him.
>
> The allegation that trial counsel's representation fell below reasonable professional norms for failing to call witnesses at trial is without merit. This Court finds the Applicant's testimony regarding the deficiencies of his trial counsel's representation was not credible. This Court finds that the Applicant's speculation that the witnesses would have offered exculpatory information is without merit. He did not offer the testimony of any of these witnesses at the PCR hearing. The Applicant has the burden of proof in PCR cases and he did not provide any evidence in accordance with the rules of civil procedure as to what testimony the alleged beneficial witnesses would have contributed to the Applicant's defense at trial. Therefore, even if trial counsel's representation was deficient as a result of the failure to call other witnesses, the Applicant did not meet his burden to show prejudice. Glove v. State, 318 S.C. 496, 458 S.E.2d 538, 540 (1995). Accordingly, this allegation of ineffective assistance of counsel is denied.

(PCR Tr. 288).

The undersigned concludes respondents' motion for summary judgment should be granted with respect to this issue. Counsel testified that he had Mr. Michaux under subpoena but he did not

appear at the trial and "just kind of disappeared." (PCR TR. 264). Counsel testified that he did not believe Michaux was going to offer anything other than the fact that the victim was an alcoholic. Counsel testified that based on his investigator's notes, as well as, the state's notes, Michaux would only have testified to prior activities a few years ago, not to the date in question. (PCR Tr. 265). Counsel testified that he had other witnesses to testify on petitioner's behalf who counsel felt were strong witnesses to support their theory that the victim had been dropped off that morning and had some injuries early that morning. Upon cross examination, counsel testified that he did not believe Mr. Michaux would have "testified as to what we were looking for which we had two witnesses testify. I don't think he could shed any light on the fact that she was with drug dealers that weekend or was doing drugs that weekend or had been beaten that weekend." (PCR Tr. 274-275). Counsel testified that is what he [Michaux] had told them but he "was definitely fading on us and, and disappeared and didn't show up. I mean from what I could tell he was hiding." (PCR Tr. 275). Counsel further testified that he took action to have the subpoena enforced and that "the judge was to send a deputy out to try to find him."  (PCR Tr. 275).

Based on the above, the record supports the state PCR court's holding and it is not contrary to clearly established federal law and an unreasonable determination of the facts in light of the evidence in the state court proceedings.

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as alleged in ground four of petitioner's claim for the reasons set forth above. Counsel acted reasonably in his representation. The undersigned finds that counsel met the reasonableness test of Strickland, supra. Certainly, petitioner has failed, assuming *arguendo* there

was error, to show the result was fundamentally unfair or unreliable. Petitioner failed to provided sufficient information to establish prejudice. He testified that Michaux provided no specific information, and petitioner did not have Mr. Michaux to testify at the PCR hearing as to what he could have or would have testified to at trial. Therefore, based on the above, the undersigned finds that ground four is without merit and is appropriately denied for habeas corpus consideration. Thus, the undersigned recommends that the respondents' motion for summary judgment be granted on this issue.

## VII.  CONCLUSION

Based on the foregoing, it is recommended that respondents' motion for summary judgment be GRANTED and petitioner's petition for Writ of Habeas Corpus denied, and this Petition dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 31, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

24

25